FILED
CLERK, U.S. DISTRICT COURT

Nov 9, 2016

CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_\_PMC\_\_\_\_\_ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br>　vs.<br>$71,953.49 IN U.S. CURRENCY,<br>　　　Defendant.<br>―――――――――――――――<br>JOSEPH KHALIFIAN AND ATLANTIC INVESTMENTS, LLC,<br>　　　Claimants. | NO. CV 04-1093 SVW (PJWx)<br><br>**FINDINGS OF FACT AND LAW FOLLOWING BENCH TRIAL** |

1

Following the bench trial of October 27, 2016, the Court finds as follows:

1.  This civil forfeiture action arises out of the investigation of an international structuring and money movement scheme that operated between at least 2000 and the end of 2002, and was managed and controlled by Moosa Zaroovabeli ("Zaroobvabeli") and Iven Rashtian ("Rashtian"). The defendant funds were seized in September of 2002 from an account at Network Bank held in the name of Claimant Atlantic Investments, LLC ("Atlantic"), an entity owned and controlled by Claimant Joseph Khalifian ("Khalifian"). The scheme involved Rashtian accepting substantial amounts of currency from customers, which currency Rashtian illegally structured into several bank accounts in Los Angeles in the name of Zaroovabeli. The structured funds were then either wire transferred to an account at Banco de Brasil in London to the benefit of Wickford Trading (a British entity owned and controlled by Zaroovabeli), or transferred among the domestic Zaroovabeli accounts into which the currency was structured.

2.  The structured funds ultimately were returned to the customers of the scheme, minus commissions paid to Rashtian and Zaroovabeli, in the form of wire transfers from the Wickford Trading account to accounts identified by the customers, or checks drawn on either the Wickford Trading account or one of the domestic Zaroovabeli accounts.

3.  Khalifian, the owner and operator of Atlantic, was a customer of the scheme and delivered currency to Rashtian, either directly or through co-conspirator Shahram Golbari ("Golbari"), on numerous occasions. Between 2000 and the end of September 2002, Khalifian received a total of approximately $544,000.00 as part of the scheme, either through wire transfers of structured funds from the Wickford Trading account directly into the Atlantic account at Network Bank, or as checks drawn on the Wickford account or one of the Zaroovabeli

accounts in the United States.  Upon receipt of the checks, Khalifian would deposit them in the Atlantic account at Network Bank.  The Network Bank account from which the defendant funds were seized was funded entirely by structured funds.  The Court finds that the entirety of the defendant funds is traceable to structured deposits of currency.

    4.    Rashtian, Zaroovabeli and Khalifian were federally prosecuted for their involvement in the scheme.  In September 2008, Khalifian entered into a plea agreement in which he agreed to plead guilty to income tax evasion.  In the plea agreement, Khalifian admitted that he had failed to report all income earned by him in 2002, and had provided $149,630 in currency to another individual, which funds were structured into bank accounts in the United States and eventually deposited into the Atlantic account.

    5.    It is unlawful to cause, for the purpose of evading a financial institution's reporting requirements, a financial institution to fail to file certain reports required by the Secretary of the Treasury, such as the report (known as a Currency Transaction Report, or "CTR") that is required when the institution is involved in a transaction for the payment or receipt of $10,000 or more in currency.  31 U.S.C. § 5324(a)(1).[1]  It is also unlawful to engage in transactions with a domestic financial institution in a manner that results in the evasion of such reporting requirements.  31 U.S.C. § 5324(a)(3).  The practice of making cash transactions with the purpose of avoiding these reporting requirements is referred to as "structuring."[2]

---

[1] The authority requiring the filing of CTRs by financial institutions is 31 U.S.C. § 5313(a) and its regulations.

[2] The domestic financial institutions involved in this case included Wells Fargo Bank, Washington Mutual Bank and Network Bank, all of which are (or were during the relevant period) "financial institutions" within the meaning of 31 U.S.C. § 5312(a)(2).

6. The elements required to establish that the defendant funds are subject to forfeiture are that: (a) a person, (b) with the intent of avoiding a reporting requirement of 31 U.S.C. § 5313(a), (c) caused or attempted to cause a domestic financial institution to fail to file a report required under that section, or (d) structured or assisted in structuring, or attempted to structure or assist in structuring, any transaction with one or more domestic financial institutions, and (e) the defendant funds represent or are traceable to one or more such transactions. 31 U.S.C. §§ 5324(a)(1) and (c); 5317(c)(2).

7. In a civil judicial forfeiture action, "[t]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). The government may use evidence gathered before and after the filing of its complaint (18 U.S.C. § 983 (c)(2)), and may discharge its burden of proving that assets are subject to forfeiture with circumstantial evidence – the government is not required to trace assets to particular transactions. *See, e.g., United States v. Parcels of Land*, 903 F.2d 36 (1st Cir. 1990); *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 980 (9th Cir. 2002) (forfeiture determination is based on the aggregate of the facts, including circumstantial evidence).

8. The aggregate of the facts test is employed in order to determine whether assets are subject to forfeiture. Under that test, the fact-finder considers all of the facts indicative of the alleged illegal activity cumulatively, with no single factor being dispositive, in order to decide whether there is a sufficient nexus between the assets sought for forfeiture and the alleged illegal activity. *United States v. U.S. Currency, $42,500.00*, 283 F.3d 977, 980-82 (9th Cir. 2002).

9. Based on all of the evidence presented at trial, including the testimony of Rashtian and Khalifian, the Court finds as follows: Rashtian's testimony was very credible. He testified to having personally structured all of the currency received from Khalifian, whether he received it directly or through Golbari, and

testified that all of the Khalifian money was returned to Khalifian by wire transfer or check. Khalifian's testimony was not credible, especially when he testified that he essentially lied under oath in his plea agreement. And while Khalifian testified that he delivered currency to Golbari for purposes of investment in real estate, he offered no credible explanation why he gave Golbari currency only to receive the same money back in another form, deposit it into his Atlantic account, and then use it to invest with Golbari in real estate. Finally, the Court finds that Khalifian knew that the currency he provided to Golbari and Rashtian was going to be deposited into bank accounts in structured deposits.

10. Based on these findings of fact and law, the defendant funds are forfeitable to the United States. The government is entitled to judgment in the entire amount of the defendant funds.

DATED: November 9, 2016

THE HONORABLE STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

Submitted by:

EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

 /s/ Steven R. Welk
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

Attorneys for Plaintiff
United States of America